OPINION
{¶ 1} Plaintiff-Appellant John Brotherwood ("Brotherwood"), Administrator of the Estates of Joanne, John Jr. and Cassie Brotherwood, deceased, appeals from the October 16, 2006 Judgment Entry of the Mercer County Court of Common Pleas rendering judgment in favor of Defendant-Appellee Cory L. Gonzalez ("Gonzalez") and dismissing and terminating the case.
 {¶ 2} This case stems from a car accident involving two automobiles; one driven by Brotherwood's wife and the other driven by Gonzalez, that occurred on May 20, 2000 in Jefferson Township, Mercer County, Ohio. Brotherwood's wife and two children were killed in the accident. At the time of the accident, Gonzalez *Page 3 
was 16 years old, had no assets and was insured under his mother's automobile insurance policy through GEICO.[1]
 {¶ 3} On August 8, 2000 Brotherwood filed a complaint in the Mercer County Court of Common Pleas alleging that the wrongful death of his decedent family members occurred due to Gonzalez's negligence in operating an automobile under the influence of alcohol and then driving his automobile into the automobile driven by Brotherwood's wife.[2] As the case proceeded through discovery, Brotherwood filed three amended complaints and joined numerous additional defendants to the case. However, all defendants identified by Brotherwood, except for Gonzalez, were eventually dismissed in accordance with various settlement agreements.
 {¶ 4} Although this matter was initially set for a jury trial on August 3, 2004, the trial court vacated the trial date after acknowledging that it had been premature to assign this matter for trial in light of the unresolved issue regarding whether the parties had entered into a binding settlement agreement. (See June 29, 2004 Judgment Entry).
 {¶ 5} On February 28, 2006 the trial court entered a Judgment Entry on Issue of Settlement which provided, in relevant part, as follows: *Page 4 
 This matter is before the court for decision on the issue of whether plaintiff and defendant, Cory L. Gonzalez, had entered into a binding settlement agreement. . .* * *
 [T]he court finds that defendant Cory L. Gonzalez entered into a binding settlement agreement with plaintiff with regard to his liability for the wrongful death of plaintiff's decedent effective July 21, 2001, and therefore, this cause should be dismissed upon the payment of the policy limits of defendants' liability policy with GEICO.
 On or before April 1, 2006, defendant Cory L. Gonzalez, through his insurer, GEICO, shall deliver to plaintiff, through his attorney, payment of the policy limits of his liability policy insuring defendant Cory L. Gonzales, and upon receipt of same, plaintiff shall issue to defendant Gonzalez, through his attorney, a full and complete release of liability for plaintiff's claims in this cause.
 In the event that this court has not received a judgment entry of dismissal in accordance with this order prior thereto, this matter shall come on for a hearing on entry on Tuesday, April 11, 2006, at 8:30 a.m., at which time counsel shall appear at that time with their clients and show cause why they have failed to comply with the request of this court. Failure to appear may result in the court dismissing this action. IT IS SO ORDERED.
(See February 28, 2006 Judgment Entry, pp. 1-2). (Emphasis in original).
 {¶ 6} Brotherwood subsequently filed an appeal of the February 28, 2006 Judgment Entry with this court. However, on September 5, 2006 this court determined that the February 28, 2006 Judgment Entry did not dismiss all claims against Gonzalez, and instead only preliminarily determined that there had been a binding settlement agreement between Brotherwood and Gonzalez, left issues *Page 5 
unresolved and contemplated further action. Accordingly, this court determined that the trial court's Judgment Entry was not a final appealable order and dismissed Brotherwood's appeal for lack of jurisdiction. (See Brotherwood v. Gonzalez, et al. 3rd Dist. No. 10-06-12, 2006-Ohio-4551). On October 16, 2006 the trial court entered a Judgment Entry rendering judgment in favor of Gonzalez "[f]or the reasons stated in the interlocutory Order of this court of February 28, 2006" and dismissed this case.
 {¶ 7} Brotherwood now appeals, asserting one assignment of error.
 ASSIGNMENT OF ERROR THE COURT ERRED BY RULING THAT THE TORT VICTIM'S (BROTHERWOOD'S) EFFORTS TO REMOVE CERTAIN RESTRICTIVE LANGUAGE FROM A SETTLEMENT AGREEMENT, INSISTED UPON BY THE INSURANCE COMPANY, WERE A NULLITY AND THAT BROTHERWOOD HAD NONE-THE-LESS (SIC) SETTLED HIS CLAIM. THE COURT ERRED BY IMPOSING A SETTLEMENT AGREEMENT UPON THE PLAINTIFF ALTHOUGH THERE WAS NO MEETING OF THE MINDS BETWEEN PLAINTIFF AND DEFENDANT, AND THE COURT ERRED BY NOT HOLDING THE DEFENSE TO THE BURDEN OF PROOF FOR THE DEFENSE'S AFFIRMATIVE DEFENSE OF SETTLEMENT.
 {¶ 8} Although enumerated as one single assignment of error, we elect to address Brotherwood's assignment of error as three sub-assignments of error. Additionally, for ease of discussion, we elect to address these sub-assignments out of order. *Page 6 
 Sub-Assignment of Error No. 2 The trial court erred by imposing a settlement agreement upon the Plaintiff although there was no meeting of the minds between Plaintiff and Defendant.
 {¶ 9} The standard of review to be applied to a ruling on a motion to enforce a settlement agreement depends primarily on the question presented. Kaple v. Benchmark Materials, et al. 3rd Dist. No. 13-03-60, 2004-Ohio-2620. If the question is an evidentiary one, this court will not overturn the trial court's finding if there was sufficient evidence to support such finding. Chirchiglia v. Bur. Of Workers Comp. (2000),138 Ohio App.3d 676, 679, 742 N.E.2d 180. However, "[w]here the meaning of terms of a settlement agreement is disputed, or where there is a dispute that contests the existence of a settlement agreement, a trial court must conduct an evidentiary hearing prior to entering judgment."Kaple, 2004-Ohio-2620 at ¶ 4 citing Rulli v. Fan Co. (1997),79 Ohio St.3d 374, 683 N.E.2d 337, syllabus. If the dispute is a question of law, an appellate court must review the decision de novo to determine whether the trial court's decision to enforce the settlement agreement is based upon an erroneous standard or a misconstruction of the law.Id. citing Continental W. Condominium Unit Owners Assn. v. Howard E.Ferguson, Inc. (1995), 74 Ohio St.3d 501, 502, 660 N.E.2d 431.
 {¶ 10} In the present case, Brotherwood contends that the question before this court is not an evidentiary question, rather a question of whether there was a *Page 7 
settlement agreement reached. Brotherwood also contends that this appeal is based upon a question of law; specifically, whether the trial court's enforcement of the alleged settlement agreement was based upon an erroneous standard or a misconstruction of the law. Accordingly, we must review the trial court's decision de novo.
 {¶ 11} A settlement agreement is viewed as a particularized form of a contract. Noroski v. Fallet (1982), 2 Ohio St.3d 77, 79,442 N.E.2d 1302. It is a contract designed to terminate a claim by preventing or ending litigation, and such agreements are valid and enforceable by either party. Continental, 74 Ohio St.3d at 502, 660 N.E.2d 431. Therefore, the interpretation of a settlement agreement is governed by the law of contracts. Chirchiglia, 138 Ohio App.3d 676 at 679,742 N.E.2d 180.
 {¶ 12} The elements necessary to form a contract include "an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object of consideration." Kostelnik v. Helper (2002),96 Ohio St.3d 1, 16, 770 N.E.2d 58. Additionally, "[a] meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." Id. See also Episcopal Retirement Homes, Inc. v. Ohio Dep't.of Industrial Relations (1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134. *Page 8 
 {¶ 13} Regarding the issue of settlement in the present case, the trial court found as follows:
 The court finds that the evidence establishes that defendant insurer GEICO had offered to pay its policy limits for liability coverage of defendant. The court further finds that defendant conditionally accepted GEICO's tendered offer of settlement, the condition being with reservation of rights to pursue parties that GEICO did not insure. GEICO did not have any right or obligation to protect parties that it did not insure, and therefore, it could not interfere with plaintiff pursuing those parties. Plaintiff's rights to pursue parties not insured by GEICO could not be preserved by it. Since the condition plaintiff claims was precedent to his acceptance of GEICO's settlement offer on behalf of defendant Gonzalez was not within GEICO's, but rather plaintiff's control, it was a nullity. Therefore, GEICO's offer to pay policy limits for liability coverage of defendant to settle plaintiff's claims against defendant was accepted by plaintiff by his attorney's letter to Peter Star (sic) at GEICO dated July 21, 2001.
(See February 28, 2006 Judgment Entry, p. 2).
 {¶ 14} However, our review of the record reveals the following facts crucial to our determination as to whether there was a settlement agreement reached between Brotherwood's attorney and the attorney for GEICO:
 {¶ 15} On June 13, 2000 the Mercer County Probate Court appointed Brotherwood as the Administrator of the Estates of Joanne, John Jr. and Cassie Brotherwood. On June 26, 2000 Peter Starr ("Starr"), a GEICO claims examiner, advised Brotherwood's attorney, Gregory Wilson ("Wilson"), that GEICO was offering to "tender its limits of $30,000.00 to settle the Brotherwood's (sic) claim *Page 9 
in the above accident."[3] However, we note that this correspondence did not specifically advise who was to be released. On June 28, 2000 GEICO wrote to Gonzalez's mother Joreen and advised her that it was in her "son's best interest to offer the limits [of the insurance policy] in exchange for a full and final settlement from the deceased Plaintiff's estate."
 {¶ 16} On July 19, 2000 Wilson filed an application to approve settlement and distribution of wrongful death claims with the Mercer County Probate Court regarding the settlements reached with both State Farm and GEICO.[4] This application stated, in relevant part, as follows:
 The amount of the settlement or judgment is $300,000 with the sum of $30,000 from Cory Gonzalez and Joreen Gonzalez, via their carrier Geico Direct, and $270,000 from John Brotherwood's underinsured carrier, State Farm, both of which represent a complete exhaustion of the funds available under both policies of insurance.
On this same date, the Mercer County Probate Court issued an Entry approving settlement of the wrongful death claims brought by Brotherwood.
 {¶ 17} Also on July 19, 2000, GEICO faxed a release captioned "Optional Form of Agreement" to Wilson for his review. On July 21, 2000 Wilson wrote a letter to Starr that stated as follows: *Page 10 
 Regarding your proposed release, I wish to strike all language referring to suits or claims against "all others" and similar such language. In (sic) behalf of John Brotherwood, I intend to pursue an action against the person(s) or entity(ies) that provided the alcohol to Cory Gonzalez. We accept your tender of $30,000, but do so with this reservation of rights to pursue parties that you do not insure. Please advise.
 {¶ 18} On July 26, 2000 Wilson wrote another letter to Starr regarding the proposed release and stated:
 I have redacted those portions that I wish to have eliminated. Not knowing what the authors of your release intended to cover or eliminate by this language, I mean only to preserve my client's cause of action against the person or entity that provided Cory Gonzalez the booze. So, perhaps redacting certain language is not necessary, if we just add such a notation to your release. Please advise immediately.
After receiving no immediate reply from Starr, Wilson filed suit on behalf of Brotherwood in the Mercer County Court of Common Pleas on August 8, 2000.
 {¶ 19} However, after reviewing the proposed changes submitted by Wilson in his July 26 letter, Starr replied to Wilson in a letter dated August 10, 2000 which stated as follows:
 I have discussed your Release changes with my home office and they are in agreement with the first two suggested changes. As for striking paragraph two[5], we insist the language stay. We are concerned should other joint tort feasors be sued by your client *Page 11 that we would be responsible to them for indemnifications and/or contributions should your client prevail against them.
 {¶ 20} On August 23, 2000 GEICO retained attorney Rick Marsh ("Marsh") to defend Gonzalez in the lawsuit filed against him by Brotherwood.[6]
On August 30, 2000 Marsh wrote a letter to Wilson which stated, in relevant part, as follows:
 Enclosed is a copy of the Answer I have filed in this case. Pursuant to our recent discussion, the settlement will be put on the back burner until you can take the deposition of Cory Gonzalez in order to find out where the alcohol came from which he had consumed. * * *
 Once you learn the identity of the provider of alcohol, the claim will be settled for the $30,000. . .[7]
 {¶ 21} On August 27, 2004 the parties submitted their respective trial briefs on the issue of settlement to the court. Brotherwood presented evidence, including an affidavit of Wilson and the deposition testimony of Starr, to support his contention that he did not settle with either Starr or Marsh. Gonzalez presented evidence, including affidavits of Starr and Marsh and the deposition testimony of Starr, to support his contention that settlement was achieved. On September 16, 2004 the court entered a stipulation and order regarding admitting evidence on the issue of settlement and set forth a list of exhibits deemed admitted on this issue. *Page 12 
 {¶ 22} Our review of the record evinces that the documents filed by the parties in support of their respective trial briefs and deemed submitted by the trial court were simply an attempt to clarify what had transpired in the correspondence between the parties in 2000 — over four years
prior to filing briefs on the settlement issue. Accordingly, we are of the opinion that the answer to the settlement issues lies not in the supplemental evidence, depositions, and affidavits, but rather in the language contained in the letters between Wilson, Starr and Marsh.
 {¶ 23} Based upon the foregoing, it is clear from the record before this court that the parties fell short of reaching an agreed settlement. Our opinion is that a meeting of the minds does not occur until all of the details are worked out between the parties, and therefore we disagree with Gonzalez's contention that a meeting of the minds was reached as to the $30,000 and the parties just needed to go back and work out the details. We find that there was never a point in time where a "meeting of the minds" occurred between Wilson and either Starr or Marsh as to the essential terms and details of the settlement agreement.
 {¶ 24} Specifically, we find that because GEICO insisted that certain language be included in the release agreement that Wilson would not agree to, the key element of who and what claims had to be released for settlement to be reached was not determined by the parties prior to Brotherwood filing suit. *Page 13 
Accordingly, we find that the trial court erred in determining that a valid settlement agreement was reached between Brotherwood and Gonzalez based solely upon the trial court's opinion that some of the release terms in dispute were not relevant to the settlement and therefore constituted a "nullity."
 {¶ 25} Therefore, that which we have delineated as Brotherwood's "Sub-Assignment of Error No. 2" is sustained. Based upon our disposition of this sub-assignment of error, we find that the remaining portions of Brotherwood's assignment of error are rendered moot and need not be addressed. See App.R. 12(A)(1)(c).
 {¶ 26} Accordingly, the October 16, 2006 Judgment Entry of the Mercer County Court of Common Pleas rendering judgment in favor of Gonzalez and dismissing and terminating this case is reversed, and this matter is remanded for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
 ROGERS, P.J., and PRESTON, J., concur.
[1] This automobile insurance policy, effective May 5, 2000 to November 5, 2000, provided Bodily Injury Liability coverage in the amount of $15,000 per person/$30,000 per accident. (See Exhibit 7 to Starr's Deposition, as also included in the trial court's September 16, 2004 Stipulation and Order regarding admitting evidence on the issue of settlement).
[2] Prior to the date of filing the original complaint in this case, Brotherwood's insurance company (State Farm) agreed to pay $270,000 in underinsured coverage to Brotherwood.
[3] The June 21, 2000 correspondence from Starr to Wilson also included a copy of GEICO's Certification of Limits letter.
[4] The Release and Trust Agreement between State Farm and Brotherwood stated, in relevant part, as follows: "[w]ritten permission to settle with the tortfeasor, Cory Gonzales (sic), and his mother, Joreen Gonzales (sic), and their insurance carrier, Geico Direct, for the policy limits of $30,000.00 has been received from State Farm and a release will be issued to the tort feasor, his mother, Joreen Gonzales (sic) and Geico Direct."
[5] Paragraph (2) of the Release/Optional Form of Agreement reads as follows: "That the undersigned will indemnify and save harmless the Releasees from any and every claim or demand, of every kind of character which may ever be asserted by reason of said injuries, illness, or disease or the effects or consequences thereof, or damage to property or person."
[6] Prior to Marsh's involvement in this case on behalf of GEICO, Gonzalez had retained a personal attorney, James Tesno.
[7] Our review of the record reveals that Gonzalez was subsequently deposed on April 20, 2001 and that he revealed the providers of the alcohol he consumed on the night of the automobile collision. The providers themselves were also deposed. Additionally, Gonzalez was deposed a second time on January 15, 2002. *Page 1